## STATE OF NEVADA, Respondent, *v.* THOS. McNAMARA, Appellant.

The eighth section of "An Act concerning Juries," approved March 3d, 1866, provides that when, during the term of a Court, the services of a grand jury are required, and there is no existing grand jury or there is a lack of sufficient numbers to form such a body, other grand jurors may be selected *in the same maner* as is provided for the selection of petit jurors in section six of

State of Nevada *v.* McNamara.

the same Act. Section six provides for the selection of jurors by the *Judge* and the *County Assessor or Clerk.* The selection of grand jurors during a term of the Court must be by the same officers, or it will not be a legal grand jury.

An indictment found by a grand jury not legally selected, is invalid.

When a juror was selected and placed on the jury list, and summoned to attend as a juror under the name of E. Barry, but whose true name was E. *Berry*, or Edward Berry; the variance in the name would be immaterial, if it satisfactorily appeared that the person attending as a juror was the one really selected.

But, *quœre?*—Was the statement of the Judge to this effect sufficient evidence of the fact? ' Should there not have been the affidavit of at least one of the officers who selected the juror to this effect?

When two parties are jointly indicted, but are tried separately, the acts and declarations of one cannot be given in evidence against the other, until some complicity has been shown between the two. And where such evidence was given, the defendant on trial was entitled to an instruction in the following language:

"In considering this cause the jury must discard and disregard the conduct and "sayings of O'Neil, unless the evidence shows beyond a reasonable doubt that "the defendant had previously conspired to inflict an injury on the deceased, "or to commit a public offense in the prosecution of which the deceased was "slain."

When a Court approves an instruction asked, and intends to give it, but by some oversight neglects so to do, it is just as injurious to defendant as if positively refused; and if the instruction is important, entitles the defendant to a new trial.

Under our statute it is not necessary that the defendant should except to the action of the Court, in failing to give an instruction asked for.

APPEAL from the District Court of the First Judicial District, Hon. RICHARD RISING, presiding.

The facts of the case are stated in the opinion.

*Williams & Bixler,* for Appellant.

The jury were not selected according to the provisions of the statute. The proper challenge was to the panel. (*Stone* v. *People,* 2 Scammon, 326.) Defendant was entitled to have the formalities of the law complied with in drawing the jury. *People* v. *Coffman,* 24 Cal. 234.)

The record must show the jury was legally selected. (*The State* v. *Conra,* 3 Blackford, 325.) A grand jury, not lawfully drawn, cannot prefer an indictment. (——— v. *The State,* 24 Miss. 621.) It must be summoned by the person designated by law.

(5 Mass. 434.) Our statute clearly indicates the insufficiency of an indictment found by a grand jury, not selected by the proper officers. (See Stat. of 1861, p. 454, Sec. 179, and p. 464, Sec. 276.)

The Court having erred on this point, the law presumes it to be to the injury of the defendant.

The Court erred in suffering *E. Berry* to sit on the jury. No such person was selected as a juror; no such name was placed on the list. Berry not having been selected as a juror, he was a mere interloper. That a summons issued for E. Barry was served on him, no more entitled E. Berry to appear, than it would have entitled John Jones to appear as a juror.

When one not summoned as a juror appeared and was sworn in the name of one for whom a summons had been issued, a *venire de novo* was awarded. (1 Eng. Common Law, 705 ; 6 Taunton, 460. See Graham & Waterman on New Trials.)

The Court erred in admitting testimony in regard to the acts and declarations of O'Neil, and in not giving the instruction asked in relation to that testimony.

*R. M. Clarke,* Attorney General, for Respondent.

The objection that the grand jury was not regularly drawn, is not well taken. (*People* v. *Roderiguez,* 10 Cal. 59; *People* v. *Cuintano,* 15 Cal. 329; *People* v. *Moice,* 15 Cal. 331.)

There was no valid objection to the juror Berry. In this case it is evident the right person, the person really selected, served as a juror. There was no mistake about the person—there was merely a mistake about the spelling of the juror's name.

The record shows that a certain instruction was not *read* to the jury. The law allows the jury to carry all instructions given to their room. In the absence of any exception on the part of defendant, stating the facts, this Court will not presume that this instruction, which was not read merely by an oversight, was withheld from the jury on their retirement, but will rather presume they carried the instruction with them. If they had the instruction in their room, the omission to read it by the Judge was immaterial.

Error must affirmatively appear.    Every intendment is in favor of the Court below.    (5 Cal. 151 and 321.)

Opinion by Brosnan, J., Beatty, C. J., concurring.

At the January Term, A.D. 1867, of the District Court of the First Judicial District, held in Storey County, McNamara, together with one O'Neil, were jointly indicted for the crime of murder, O'Neil having been charged as an accessory.    McNamara was allowed a separate trial; was tried at said term of the Court; found guilty of murder in the second degree, and judicially sentenced to imprisonment in the State Prison for a term of thirteen years.    After having made a motion for a new trial, and also in arrest of judgment, both of which were overruled, the defendant appealed to this Court from the judgment of the District Court.

The first point to compass a reversal of the judgment made by appellant's counsel is, that the grand jury which found the indictment had not been selected pursuant to the requirements of the " Act concerning Jurors," approved March 3d, 1866, inasmuch as the jury was selected by the District Judge and one of the County Commissioners, whereas it could be legally selected only by the Judge and the County Assessor or County Clerk.    Before the jurors were sworn, the defendant being present in Court to exercise his right of challenge, a motion was made by the prisoner's counsel to set aside the panel for the irregularity referred to as regards the mode adopted in selecting the jurors.    The Court denied this application, and an exception to this ruling was duly taken on the part of the defendant.    Thereupon, the counsel challenged the individual jurors; which challenge was also overruled, and an exception was taken.

In order to reach a clear understanding of the materiality and force of the objection, it seems pertinent to state the facts upon which the objection is based, and the law by which its availability must be adjudged.

It appears by the record, and the fact is conceded, that for some cause a grand jury had not been summoned or drawn previous to the commencement of the aforesaid January Term of the Court, as required by statute.·    (Laws of 1866, 192, Sec. 7.)    This sec-

tion makes it the duty of the District Judge and any one of the County Commissioners to select a grand jury at least ten days prior to the assembling of the Court, and points out and directs the mode and machinery whereby the grand inquest shall be selected and constituted. But in the event of a failure from any cause to organize a grand jury as provided in the last-mentioned section of the Act, the Legislature, out of abundance of caution and to meet any emergency or necessity that might arise, and in order that the demands of justice may not be retarded, provided in the following section (Sec. 8) of the statute that a new grand jury "shall be selected and summoned in the same manner as is provided in section six of this Act for the selection of trial jurors."

The grand jury in the case under advisement was selected in virtue of the authority and power granted under the eighth section. We are constrained by the express and unambiguous language of this section to interpret its meaning, in connection with section six, to which it immediately and explicitly refers as to the mode of selecting a jury, under the circumstances which characterize the present case. It may well be, in fact, that the Legislature intended the selection to be made by the Judge and one of the County Commissioners, as in section seven, and that the designation of the Judge and County Assessor or Clerk as the proper officers for the selection of the jury, as in section six, was an inadvertence on the part of the Legislature. So on the other side, it may be reasonably urged that the law-makers intended precisely what their words import, (this is a primary rule of construction) for the reason that, in cases of character and accompaniments like this case, where dispatch is required in order that the business of the Courts may not be suspended or delayed, the aid of the County Assessor or Clerk was enlisted, as being more immediately approachable than that of a County Commissioner, who is not obliged to reside at the county seat, where the Courts are required to be held.

However that may be, we are not at liberty to speculate as regards probabilities, where the language of the law is so clear and unambiguous as in the case before us.

The Legislature must be intended to mean what they have expressed in plain terms. Whenever they have done so, there remains

no room for construction by Courts. (*Brown* v. *Davis*, 1 Nevada State Reports, 409, and cases cited.)

Having proceeded thus far, it becomes imperative to direct attention to the sixth section of the statute. This section makes provision for the selection of a trial jury during the term, whenever it appears to the satisfaction of the Judge that any of the occasions designated in the section has occurred. In such event, it makes it "lawful for such District Judge and the County Assessor or Clerk to select alternately from the body of the county the names of a sufficient number of persons lawfully qualified to serve as trial jurors," etc. (Laws of 1866, 192, Sec. 6.)

But as we already stated in this case, the provision for selecting the jury by the Judge and the County Assessor or County Clerk was clearly neglected. This was a manifest departure from the requirement of the law, and if it can be justified, a jury may be selected by the Judge and any other officer or individual not designated by law.

The Legislature seems to have taken particular care to secure fair and impartial jury trials ; but if the doctrine contended for on the part of the prosecution be established or tolerated, all the law on the subject of selecting juries becomes nugatory—a dead letter. The prisoner was about to be tried for a crime involving his life. Upon an issue of such moment he was entitled to demand the observance of all the formalities of law. It is his constitutional privilege to stand upon his strict legal rights, and he is entitled to a trial conducted in accordance with the legal formula prescribed.

An indictment found by a jury not legally constituted cannot be valid. Indeed, the ground of error alleged is made by statute, one of the causes for which an indictment will be set aside. (Laws of 1861, 454, Sections 178, 179 ; Id. 464, Section 276.)

A jury must be summoned by the officer designated by law, and no other person or officer can legally discharge that duty. (5 Mass. 434, 435.) Is it not equally if not more necessary that the jury should be *selected* by the officers whom the law invests with the power of exercising that function ? In the case of the *People* vs. *Coffman* (24 Cal. 234) the Supreme Court of that State employ the following language on this subject :

" The defendant is entitled to have all the formalities observed that are prescribed by law for the summoning, drawing and impanneling of the jury, and if any omission or irregularity in that respect occurs, he is entitled to have the same corrected, and if not so corrected upon its being pointed out by the defendant, it is error," etc.

Our attention has been called to some California decisions to show that the objection in this case was not well taken. *People* vs. *Roderiguez,* 10 Cal. 59, is one of them. That case has not the most remote application to this.

The objection to the panel in that case was that the jury had not been selected before the term of the Court commenced.

The jury was selected during term, which the law authorized ; and was selected in exact conformity with the statute.

In the *People* vs. *Cuintano* (15 Cal. 327) the objection was the same as that in the last mentioned case. The Court say : " We see nothing in the facts of this case to distinguish it from that of the *People* vs. *Roderiguez* (10 Cal. 50)." In the other case cited, *People* vs. *Moice,* the challenge was not made in the Court of Sessions, in which Court the indictment was found, notwithstanding the prisoner was present and might have interposed the objection.

The Court merely hold that it was too late to raise the question in the District Court, where the cause was sent for trial. There is nothing in these decisions that conflicts in the slightest degree with the views we have herein expressed.

Another ground of error assigned is that one of the jurors, by name Edward Berry, had not been summoned or drawn by that name, but that *E. Barry* had been drawn. Berry in fact was the person summoned, and we are not informed by the record that any individual bearing the *cognomen* Barry, was at the time physically resident within the county where the venue is laid, so as to be subject to the process of the Court.

But connected with the challenge to this juror, the record discloses the fact that Barry was the surname contained in the original certificate of selection made by the Judge and Clerk ; and also in the venire, summons and ballot drawn. With a view of obviating this apparent inconsistency, the Judge, subject however to

the objection of the defendant's counsel, made an oral statement to the effect that *Berry* was really the person selected and summoned.

The objection to the statement so made is that it was not the best evidence of the identity of the individual selected. This aspect of the question creates the only embarrassment we meet in disposing of the materiality of the objection. We are not prepared to adjudge that it is altogether without force. We rather incline to the belief that the affidavit, at least, of the Clerk, or even of the Judge, should have been resorted to and embodied in the record. Be that however as it may, we are unable to perceive how this variance in the *name*, standing alone, could have prejudiced the defendant. But as our decision will be governed by other points presented, we see no necessity for definitively passing upon the admissibility or competency of the Judge's explanatory verbal statement.

It is further urged in behalf of the appellant that the Court erred in admitting evidence of the acts and declarations of O'Neil, and for not reading instruction number one to the jury. Up to the time when this testimony was offered, the record does not disclose a scintilla of proof of any connection or concert of action between O'Neil and McNamara. The record is equally silent throughout as to how the two happened to be together in the house where the difficulty took place—whether they came or left together. There is a total absence of evidence also of any assent or approval on the part of McNamara of anything said or done by O'Neil at the time. The Court admitted the evidence notwithstanding the defendant's objection. On this point, one witness testified that O'Neil had a difficulty with another man. It does not appear who that person was, whether the deceased or some other party. That at the time or a little before this difficulty, O'Neil had a pistol; that he threw his coat off, and delivered the pistol to the witness and told him to take care of it. He (O'Neil) said: "Take hold of this pistol while I settle the difficulty with that man in the room." The witness was then asked by the prosecuting attorney: "Where was McNamara at that time; and how far from O'Neil?" He answered: "At the corner table taking beer, perhaps fifteen or eighteen feet across." The witness also stated that O'Neil had the

man (still not named or identified, that we can discover) on the ground, and kicked him a couple of times. That O'Neil then came to witness and demanded the pistol, which witness returned ; that he flourished it about and said : " I am on the fight, shoot or cut any way you have a mind to take me."

Another witness, a policeman, testified under the like objection by defendant's counsel, that about an hour before the killing of Eckert, O'Neil drew a pistol in the house where the affray took place, (McNamara being present at the time) and said he could shoot as fast as anybody ; that witness said to O'Neil he would lock him up if he did not put up the pistol. He put up the pistol, and said he did not mean anything by it.

With the view of counteracting any effect O'Neil's conduct and declarations might have as against the defendant, his counsel requested the Judge to give the following instruction to the jury : " In considering this cause the jury must discard and disregard the conduct and sayings of O'Neil, unless the evidence shows beyond a reasonable doubt that the defendant had previously conspired to inflict an injury on the deceased, or to commit a public offense, in the prosecution of which the deceased was slain."

The Court, it appears, approved of the instruction, and intended to have given it to the jury. The Judge had marked it on the margin " given," and his statement appearing in the record is that it " was intended to have been given by the Court, and it was marked ' given,' but unintentionally omitted reading the same to the jury."

We have no hesitation in declaring, after a careful examination of the facts disclosed by the record of this case, that the foregoing instruction was eminently proper, and should have been given in the charge to the jury. And it is apparent that the Court below so understood and intended to give it, but through an oversight failed to do so. The defendant was not only entitled to have it read to the jury, but had a legal right to have it placed in their hands for inspection and perusal when they had retired for consultation and deliberation in relation to their verdict. (Criminal Practice Act, Secs. 387, 393.)

Even had this instruction been before substantially given by the Court in its charge, which is not the fact, still it should have been

given, or else the fact of its having been already given should have been communicated by the Court to the jury as the reason for its refusal. (*People* v. *Bonds*, 1 Nev. 33.)

It is contended by the learned counsel for the people, that no exception has been taken, nor has the omission been assigned as ground of error in the District Court, and consequently it comes too late in this Court. We cannot agree to this proposition. The defendant had a clear right to have the instruction given. If refused, he was not required to take any exception. (*Vide* Sec. 426, Crim. Pr. Act.) The defendant or his counsel may not, indeed could not, well know that it had not been refused. Had it in fact been refused, it would have been an error most assuredly. In what respect does the effect of omitting to give an instruction that should have been given, materially differ from the effect consequent upon an absolute refusal? To the prisoner they are precisely the same. And thus, while neither himself nor his counsel is chargeable with any negligence, his life is jeopardized through an unintentional oversight of the Judge, if the argument of the counsel for the State be well founded. The law does not countenance such absurd conclusions. Had the instruction been given, the trial might have eventuated in a different result. This is probable, and is sufficient for this Court to know.

We have, therefore, come to the conclusion that, upon both the first and third grounds of error assigned, the judgment should be reversed, and a trial *de novo* had.

It is accordingly so ordered.